**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


**ROLAND SCHOELLES,**

    **Petitioner,**

**vs.**                                              **Case No. 4:07cv220-MP/WCS**

**JAMES R. McDONOUGH,**

    **Respondent.**

                                    /

**REPORT AND RECOMMENDATION TO DENY § 2254 PETITION**

Petitioner filed a 28 U.S.C. § 2254 petition for writ of habeas corpus, challenging the conviction and sentence imposed in the Second Judicial Circuit, Franklin County Florida.  Doc. 1.  Respondent was directed to file an answer, and Petitioner was given time to file a reply but not required to do so.  Doc. 3.  Respondent filed an answer with supporting exhibits.  Doc. 15.  References to exhibits are to those supplied with the answer unless otherwise noted.[1]  Petitioner did not file a reply.

---

[1] The order to show cause specifically directed that, "[i]f voluminous exhibits or records (such as transcripts) are submitted in support of the answer, **paper copies shall be provided to the court**."  Doc. 3, p. 3 (emphasis in original).  Respondent did not provide paper copies.  In electronic case filing (ECF) system, docs. 15-2, 15-3, 15-4, and pp. 1-13 of 15-5 comprise Ex. A.  The remainder of the exhibits are in doc. 15-5 as

**Procedural History**

in the early morning hours of July 11, 2002, Petitioner drove a car while intoxicated, ran a stop sign at a dead end, and hit an oak tree.  Ex. A, at 95 (transcript of plea hearing) (doc. 15-4, p. 4);[2] Ex. A at 23 (doc. 15-2, p. 33) (information).  Both Petitioner and his son, Kevin Schoelles,[3] were injured.  Counsel said "[t]he son was taking pills, at least is what he's confided in me, and I think that's what Mr. Schoelles would say."  *Id.*  Ex. A at 95 (doc. 15-4, p. 4).

Petitioner said that his son, who was living with him, was having a party that Petitioner joined in when he came home, and he later got in the car with a buddy to go get cigarettes.  *Id.*, at 63 (doc. 15-3, p. 23) (transcript of sentencing).  He said he was not driving and had no intentions of driving, and his son got in the back seat.  *Id.*  On the way back Petitioner's friend got in another car and told Petitioner to take that car back to his house.  *Id.*

> And I opened the back door, I hollered at my son.  I said hey, boy, come on, get up in the front, we're going home.  And he had stolen a bunch of pills from his mother, valiums and all, and overdosed on them.  And luckily, now, thank God he didn't wake up [to] get in the front seat, because the passenger side front seat, from my understanding, was way

---

follows (including the cover page for each exhibit): Ex. B (pp. 14-34), Ex. C (pp. 35-37), Ex. D (pp. 38-39), Ex. E (pp. 40-42), and Ex. F (pp. 43-54).

[2] The court references pages of Ex. A by the record page number appearing at the bottom of each page, followed in parentheses by reference to the document and page number in ECF.  The first seven pages of Ex. A (doc. 15-2, pp. 4-10 in ECF) do not have record page numbers at the bottom.

[3] The victim was referenced as K.M.S. in the charging information as he was a minor at the time.  Ex. A at 23 (doc. 15-2, p. 33).  He is identified by name in the medical records, discussed *infra*.  The information charged that Petitioner had a blood alcohol or breath alcohol content of .08 or more.  *Id.*

>down the road from the impact.  It went out the window.  The oak tree stopped me.  He was sitting behind me.  He never even woke up in the accident, which they Life Flighted both of us.  They didn't know – he wasn't in as bad a shape as me.  They got him up there and pumped his stomach out and all, and released him.  He was back the next day doing the same stunts.

*Id.*

On January 12, 2004, Petitioner entered a plea of no contest to DUI with serious bodily injury and to driving while his license was suspended or revoked.  Ex. A, pp. 93-104 (doc. 15-4, pp. 1-13).

In exchange for his plea, Petitioner was to be sentenced to one year of community control followed by four years probation, along with special conditions (attendance at DUI school, suspension of his driver's license for five years, impoundment of his vehicle for 30 days), with jail time and restitution to be determined by the court at a separate hearing.  *Id.*, at 93 (doc. 15-4, p. 2).  As a second DUI in five years, Petitioner faced ten days to sixth months of jail time.  *Id.*  Petitioner said he understood that the amount of jail time would be up to the court, and that if he did not comply with the terms of probation he faced a minimum of 67 months.  *Id.*, at 100-101 (doc. 15-4, pp. 9-10).

Sentencing was held on February 9, 2004.  Ex. A at 58-75 (doc. 15-3, pp. 18-35). Petitioner told the court that due to the accident he was "pretty much sentenced for life, because my right leg didn't heal right."  *Id.*, at 61 (doc. 15-3, p. 21).  The prosecutor said that they offered a six month jail cap in this case to induce a plea, as the son did not want to be a witness against his father.  *Id.*, at 65 (doc. 15-3, p. 25).  Defense counsel, seeking less jail time, noted the case was unique because "this accident saved his son's

life. He had an overdose, and being Life Flighted to Tallahassee saved his life. That's part of the reason he didn't want to come forward on this." *Id.*, at 67 (doc. 15-3, p. 27). He said that Petitioner had "permanent injuries with his legs and back that his son does not have." *Id.*

The court told Petitioner that he ought to give his counsel and the prosecutor "a big hug for being able to get an agreement" like he got in this case. *Id.*, at 69 (doc. 15-3, p. 29). The court thought that six months of jail time had to be imposed, but even this was so low "it's almost incidental." *Id.*, at 70 (doc. 15-3, p. 30). Petitioner was told he had a year of community control, then probation, and was "looking at five years minimum in state prison" if he violated. *Id.* He was ordered to report to the county jail to serve six months as a condition of probation. *Id.*, at 74-75 (doc. 15-3, pp. 17-18).

Petitioner did not appeal. After twice testing positive for drugs (cocaine on July 14, 2004, and marijuana on October 29, 2004), Petitioner was sentenced to five years with credit for time served. Ex. A at 17-22, 124-128 (doc. 15-2, pp. 27-33, doc. 15-4, pp. 33-37).

Petitioner filed a Fla.R.Crim.P. 3.850 motion claiming ineffective assistance of counsel for failing to investigate and depose witnesses, and for failing to advise Petitioner that the injuries to his son did not constitute "serious bodily injuries" for purposes of the offense. *Id.*, at 1-5 (doc. 15-2, pp. 11-15). The trial court denied the motion. *Id.*, at 107-112 (doc. 15-4, pp. 16-21). Denial of relief was affirmed on appeal. Exs. D and E (order and mandate).[4]

---

[4] The Rule 3.850 motion and the trial court's order denying it are also attached to the § 2254 petition (doc. 1) as Exs. A and B. Also attached to the petition are the

**§ 2254 Claim and State Record**

Petitioner raises one ground in support of his § 2254 petition: ineffective assistance of counsel in advising him to enter a nolo contendere plea when the alleged victim was not injured. Doc. 1, pp. 4-5.[5] Petitioner alleges that he violated probation, it was reinstated, he violated again and was sentenced to five years. *Id.*, p. 5.

> Prior to pleading to the violation petitioner's counsel, through contact with the victim, learned that the victim was never injured during or as a result of the accident. However, counsel advised petitioner to go ahead and plead guilty to the violation and that he (counsel) would then raise that issue on appeal. As such, petitioner began his sentence and counsel submitted a 3.850 motion raising the discovered issue that no great bodily injury occurred; which, absent this, would only be a misdemeanor D.U.I. . . . Petitioner will point to the fact that it was the victim's overdose which resulted in his stomach being pumped. Petitioner also learned that the state knew of this fact in the pre-trial stage.

*Id.* (reference to Rule 3.850 motion omitted). Petitioner claims that he is therefore actually innocent and never committed a felony under Florida law. *Id.*, pp. 5-6.

In denying relief, the state court noted that defense counsel demanded discovery, and the answer to his demand for discovery recited witnesses and listed medical records for Kevin Schoelles from Weems Memorial Hospital, which had been provided to defense counsel. *Id.*, at 107-108 (doc. 15-4, pp. 16-17) (referencing the Amended Answer to Demand for Discovery). The court said Petitioner was ignoring the fact that he was well aware by the time of his plea that his son's stomach was pumped

---

motion for rehearing or certification on appeal and the appellate court's order denying rehearing or certification, Exs. C and D.

[5] The form petition is six pages; Petitioner inserted two hand written pages between pp. 4 and 6 of the form. The court therefore references the actual number of the page (and as it appears on the document as scanned in ECF) rather than the page number of the form petition.

Case No. 4:07cv220-MP/WCS

and he was released from the hospital, and that the court found a factual basis for the plea.  Ex. A at 110 (doc. 15-4, p. 19).  The court found it clear from the record that Defendant was aware of the nature of the injury at the time of his plea, and his argument (raised in the 3.850 motion) that the accident probably saved his son's life had actually been raised by defense counsel at sentencing.  *Id.*, at 110-111 (doc. 15-4, pp. 19-20).

The court found that Petitioner knew all the same facts at the time of his plea and sentencing, and as a result of negotiations received community control to be followed by probation.  *Id.*, at 111 (doc. 15-4, p. 20).  It was only after twice failing to comply with community control that Petitioner was attempting to avoid responsibility by faulting counsel.  *Id.*  The court found that Petitioner had not demonstrated that counsel made errors so serious he was not functioning as counsel guaranteed by the Sixth Amendment.  *Id.*

Petitioner argued on appeal that while he did know the facts about his son's injury, he did not know (and counsel did not advise) that those facts failed to establish the offense of DUI causing serious bodily injury.  Doc. 1, Ex. C.  This argument was not addressed in any written order from the state courts.

The amended answer to demand for discovery, referenced in the trial court's order, was supplied by Respondent.  Ex. F (doc. 15-5, p. 43).  Attached to the amended answer was a medical coding summary for Kevin Schoelles, admitted to Tallahassee Memorial Hospital (TMH) on July 11, 2002, and discharged on July 12, 2002.  *Id.*, p. 2 (doc. 15-5, p. 45).  He was seen by Dr. Thornberry.  *Id.*  The final diagnosis was "closed fracture of dorsal (thoracic) vertebra without mention of spinal cord injury," with

secondary diagnosis of "hematoma of kidney, without rupture of capsule, without mention of open wound into cavity."  *Id.*  Also noted as secondary: "other noncollision motor vehicle accident injuring driver of motor vehicle other than motorcycle," "nondependent cannibis abuse," and "other, mixed, or unspecified drug abuse."  *Id.*  Set forth under "procedures" is "continuous mechanical ventilation for less than 96 consecutive hours."  *Id.*

The doctor's handwritten notes are difficult to read, but reflect that Kevin Schoelles was involved in a motor vehicle accident (MVA), he was "slightly lethargic" but "oriented to time / place."  *Id.*, p. 4 (doc. 15-5, p. 47).  Skin or shin abrasions on the left and right were noted, and something was noted about the left forehead.  *Id.*  He was admitted for bed rest, and "Jewett Brace in AM," presumably for the broken vertebra.  *Id.*[6]

The notations made on the emergency room report, also difficult to read, reflect Kevin Schoelles was a passenger without restraints in a motor vehicle collision (MVC), and was unresponsive at the scene.  *Id.*, p. 5 (doc. 15-5, p. 48).  He had left and right shin abrasions, and a hematoma to the left forehead.  *Id.*

**Legal Analysis**

Section 2254(d) provides:

 An application for a writ of habeas corpus on behalf of a person in
custody pursuant to the judgment of a State court shall not be granted with

---

[6] A Jewett Brace is "a hyperextension orthosis with pads as corrective pressure points at the sternal notch, above the pubis, and in the lumbar lordosis."  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, available at:  http://www.mercksource.com (Medical Dictionary link).

> respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See also Williams v. Taylor, 529 U.S. at 412-413, 120 S.Ct. at 1523; 535 U.S. at 694, 122 S.Ct. at 1850 (explaining the "contrary to" and "unreasonable application" clauses).[7] "Avoiding these pitfalls [described in Williams v. Taylor] does not require citation of our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (emphasis in original).

The law governing ineffective assistance of counsel claims was clearly established in Strickland v. Washington, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 2066, 2068, 80 L.Ed.2d 674 (1984). Williams, 529 U.S. at 405-406, 120 S.Ct. at 1519-1520. Under the two part test of Strickland, Petitioner must demonstrate both deficient performance and prejudice to the outcome. The state court here set forth the correct standard, albeit without any citation to Strickland. Ex. A at 109 (doc. 15-4, p. 18).

> In *Strickland* we said that "[j]udicial scrutiny of a counsel's performance must be highly deferential" and that "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Thus, even when a court

---

[7] This was from the opinion of Justice O'Connor, who wrote the opinion of the Court with respect to Part II (except the footnote). Justice Stevens announced the judgment and delivered the opinion of the Court for Parts I, III, and IV.

> is presented with an ineffective-assistance claim not subject to § 2254(d)(1) deference, a defendant must overcome the "presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' "

Bell v. Cone, 535 U.S. 685, 698, 122 S.Ct. 1843, 1852, 152 L.Ed.2d 914 (2002) (quoting Strickland, other citation omitted).

Petitioner "must do more than show that he would have satisfied *Strickland*'s test is his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly." 535 U.S. at 698-699, 122 S.Ct. at 1852. "[T]he most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Williams v. Taylor, 529 U.S. at 410, 120 S.Ct. at 1522.

Petitioner argued on appeal that the state court improperly looked at what facts he knew at the time of the plea, rather than whether he was properly advised by counsel that the known facts did not constitute the offense charged. This is not an unreasonable argument in light of the trial court's order emphasizing Petitioner's knowledge of the same facts at the time of his plea and sentencing. But even without determining the procedural niceties of whether this could conceivably be contrary to or an unreasonable application of (or even an incorrect application of) Strickland, Petitioner has not demonstrated ineffective assistance of counsel to this court.

To establish deficient performance, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." 466 U.S. at 690, 104 S.Ct. at 2066. In reviewing the claim,

"counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690, 104 S.Ct. at 2066. "[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take." Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc), *cert. denied,* 531 U.S. 1204 (2001). *See also* Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citing Chandler). There are no rigid requirements or absolute duty to investigate a particular defense. Fugate v. Head, 261 F.3d at 1217*.*

For prejudice, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S.Ct. at 2068.

In the context of a guilty plea, the first part of the Strickland test is the same, but "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985); Gordon v. United States, 496 F.3d 1270, 1277 (11th Cir. 2007), *quoting,* Hill. The "prejudice" inquiry in the context of a guilty plea "will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial." Hill, 474 U.S. at 59, 106 S.Ct. at 370.

> For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial. *See, e.g., Evans v. Meyer*, 742 F.2d 371, 375 (CA7 1984) ("It is inconceivable to us . . . that [the defendant] would have gone to trial on a defense of intoxication, or that if he had done so he either would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received").

Hill, 474 U.S. at 59, 106 S.Ct. at 370-371.

Although Strickland explained the performance and prejudice prongs of analysis, "there is no reason . . . to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697, 104 S.Ct. at 2069. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

Petitioner was charged under § 316.193(3)(c)(2), which makes it a third degree felony when DUI "causes or contributes to causing . . . [s]erious bodily injury to another, as defined in § 316.1933 . . . ." "Serious bodily injury" as defined "means an injury to any person, including the driver, which consists of a physical condition that creates a

substantial risk of death, serious personal disfigurement, or protracted loss or impairment of the function of any bodily member or organ." § 316.1933(1)(b).[8]

The record before this court does not reflect that Kevin Schoelles suffered only injuries related to his own drug usage, or even that his stomach was pumped or he was saved from a drug overdose after the accident. The record reflects that drugs were in his system, and that mechanical ventilation was prescribed, though it is not clear that the latter had to do with drug usage or a stomach pump. Other than the comments by himself and his counsel at the plea and sentencing, Petitioner does not offer any evidence to show that the DUI did not cause or contribute to causing the injuries suffered by Kevin Schoelles shown on this record. The medical records reflect that Kevin Schoelles had a broken vertebra and injury to his kidney – clearly serious injuries – as well as a hematoma to the forehead and abrasions. A broken vertebra is a serious personal disfigurement. All were apparently caused by the accident.

Moreover, even if the "serious bodily injury" proof was debatable, and it is not, in exchange for his plea, Petitioner faced a maximum of six months jail time, as well as the community control and probation. Particularly given the court's comments that six months seemed "almost incidental," he could well have received a longer term absent

---

[8] Section 316.193(3)(c)(2) is "internally inconsistent," as it specifically requires injury "to another" but references a definition which includes injury to the driver. Smith v. State, 793 So. 2d 1118, 1119 (Fla. 1st DCA 2001). It therefore does not authorize conviction with serious bodily injury where only the driver is injured. Id.; Adams v. State, 941 So.2d 553, 554 (Fla. 1st DCA 2006) (same, citing Smith).

Case No. 4:07cv220-MP/WCS

the plea, which was authorized even if serious bodily injury could not be proven.[9] Had he not violated the terms of his release he would only have served six months.

Petitioner has not demonstrated ineffective assistance of counsel in advising him to enter a plea agreement in this case.

**Recommendation**

It is therefore respectfully **RECOMMENDED** that the § 2254 petition (doc. 1), challenging Petitioner's conviction and sentence imposed in the Second Judicial Circuit, Franklin County Florida, case 2002-0186-CF, be **DENIED** with prejudice.

**IN CHAMBERS** at Tallahassee, Florida, on January 30, 2008.

s/ William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

---

[9] DUI with damage to another person is a misdemeanor of the first degree, punishable "by a definite term of imprisonment not exceeding 1 year" and a fine not exceeding $1,000. §§ 316.193(3)(c)(1), 775.082(4)(a), 775.083(1)(d). DUI with serious bodily injury is a felony of the third degree, punishable "by a term of imprisonment not exceeding 5 years" and a fine not exceeding $5,000. §§ 316.193(3)(c)(2), 775.082(3)(d), 775.083(1)(c). Petitioner also had the charge of driving while license suspended or revoked under § 322.34(2)(b) (the statute cited in the information, applicable to a second conviction), which he does not challenge. That is a misdemeanor of the first degree, punishable "by a definite term of imprisonment not exceeding 1 year" and a fine not exceeding $1,000. §§ 322.34(2)(b), 775.082(4)(a), 775.083(1)(d). Presumably, absent a plea the state could have sought consecutive sentences.